IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| HAWK TECHNOLOGY SYSTEMS, LLC, | § § | |
| Plaintiff, | § § | Case No: |
| vs. | § § | PATENT CASE |
| WHITESBORO INDEPENDENT SCHOOL DISTRICT | § § § | JURY TRIAL DEMANDED |
| Defendant. | § § § | |

## COMPLAINT

Plaintiff, Hawk Technology Systems, LLC ("Hawk"), files this Complaint against Whitesboro Independent School District ("WISD") for infringement of United States Patent No. RE43,462 ("the '462 Patent).

## NATURE OF THE ACTION

1. This is a civil action for patent infringement of United States Patent No. RE43,462 ('462 Patent). The '462 Patent is a reissue of United States Patent No. 5,265, 410 (the '410 Patent). The independent claims in the reissued '462 Patent are substantially identical to the corresponding claims in the original '410 Patent.

## PARTIES

2. Hawk is a limited liability company organized and existing under the laws of the State of Florida, and maintains its principal place of business at 2 South Biscayne Blvd., Suite 3800, Miami, Florida 33131.

3. Defendant is a Texas independent school district and is located at 115 Fourth Street, Whitesboro, TX 76273.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. §§ 1331 and 1338(a), this Court has original jurisdiction over the subject matter of this action because this is an action arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et. seq.*

5. This Court has personal jurisdiction over Defendant because Defendant has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

6. Pursuant to 28 U.S.C. §1400(b), venue is proper in this district.

## GENERAL ALLEGATIONS

7. Hawk Technology Systems, LLC was formed in 2012 to commercialize the inventions of its founder, Barry Schwab.

8. Mr. Ken Washino and Mr. Schwab invented what is claimed by the '462 Patent.

9. Mr. Washino and Mr. Schwab have collaborated on a number of other pioneering inventions resulting in patents in the areas of video archiving, video downloading and digital cinema.

10. Mr. Schwab is also a named inventor on more than thirty patents, ranging from consumer products to secure network computing.

### Claim 12 Of The '462 Patent

11. Claim 12 of the '462 patent states:

    The method of simultaneously displaying and storing multiple video images, comprising the steps of:

    receiving video images at a personal computer based system from one or more sources;

    digitizing any of the images not already in digital form using an analog-to-digital

converter;

displaying at least certain of the digitized images in separate windows on a personal computer based display device, using a first set of temporal and spatial parameters associated with each image in each window;

converting one or more of the video source images into a data storage format using a second set of temporal and spatial parameters associated with each image; and simultaneously storing the converted images in a storage device.

('462 Patent, Col. 11, line 62 – Col. 12, line 10).

12. Defendant uses a video storage and display system and methods that infringe the '462 Patent.

## COUNT I: DIRECT INFRINGEMENT OF THE '462 PATENT

13. The allegations contained in paragraphs 1-12 above are hereby re-alleged as if fully set forth herein.

14. The cause of action arises under the patent laws of the United States, and, in particular, 35 USC §§ 271, *et seq.*

15. Plaintiff is the owner by assignment of the '462 Patent, with sole rights to enforce the '462 Patent and to sue infringers.

16. A copy of the '462 Patent titled "Video Monitoring and Conferencing System" is attached as Exhibit **A**.

17. Without Plaintiff's authorization, Defendant uses a video storage and display system and/or methods that infringe one or more of the claims in the '462 Patent including at least Claim 12 of the '462 Patent.

18. Plaintiff has been damaged by Defendant's infringement.

19. Defendant uses a video surveillance system provided by Digital Watchdog (the "Product").

20. The Product provides a method of simultaneously displaying and storing multiple

video images. For example, the Product provides a Live Screen, which displays a live video image transferred from each channel associated with one or more surveillance cameras. The Product allows a user to control the pan, tilt, and zoom features of a camera on the Live Screen and also allows a user to zoom in and out and capture live video. Thus, the Product enables its users to view video images sent by one or more cameras live while performing recording simultaneously. See, Digital Watchdog NXMS User Manual.

21. The Product practices receiving video images at a personal computer based system from one or more sources. For example, as shown in the illustrative screen shot below, the Product provides output, reception and display of video signals from multiple cameras. The camera devices capture video images and provide them to the video management system. The video management system facilitates its users to view and store the video images. Camera outputs can be modified according to the needs of the user by changing the camera and signal parameters. A digital video recorder is used to convert the input signal from every camera into digitally compressed images of various formats. Resolutions can be changes for a fixed set of resolutions present. See, Digital Watchdog NXMS User Manual; see also H.264 Digital Video Recorder User Manual.



22.     The Product practices digitizing any of the images not already in digital form using an analog-to-digital converter.  For example, the Product's digital video recorder is used to cover the input signals into digitally compressed images of various formats. The video images from each camera which are displayed on the computer monitor are configured with a specified frame rate and compression format, i.e. temporal and spatial parameters. The video streams received are converted in to digitized images.  See H.264 Digital Video Recorder User Manual.

23.     The Product practices displaying at least certain of the digitized images in separate windows on a personal computer based display device, using a first set of temporal and spatial parameters associated with each image in each window.  For example, the Product enables a user to configure a device's options such as recording resolution, frame-modes, and type of alarm events, on the user's local computer.   Resolution refers to horizontal and vertical pixels in a page. The resolution is indicated as (horizontal) X (vertical) pixel number.   The Product allows selection from among, for example, settings of 352×240/288, 720×240/288, and

720×480/576. The default setting is 352×240/288. As the resolution number increases, the picture quality is higher. 352×240 is VHS level and when a high quality camera is used, 720×480/576 shows DVD level picture quality. When the picture quality increases, the storage capacity is bigger and the recording period will be shorter. Thus, selecting an appropriate resolution according to the situation is important. The video images from each camera which are displayed on the computer monitor are configured with a specified frame rate and compression format, i.e. temporal and spatial parameters. The availability of multiple resolutions ensures that the temporal and spatial parameter of a video can be altered. See H.264 Digital Video Recorder User Manual.

24. The Product practices converting one or more of the video source images into a data storage format using a second set of temporal and spatial parameters associated with each image. As illustrated in the screen shot below, the Product enables a user to configure, from the user's computer, a given device's options such as recording resolution, frame-modes, and type of alarm events. Digital video servers store content in a video format, such as MPEG-2, H.264 and the like. Computer hard drives only store content in data formats, so all systems must provide for a conversion from a video format to a data format. The Product's video management system enables a user to vary the temporal and spatial parameters associated with each image as per the requirements of video recording and storage. The Product provides for many different resolutions to be used for conversions. See, Digital Watchdog NXMS User Manual; see also H.264 Digital Video Recorder User Manual.



25. The Product practices simultaneously storing the converted images in a storage device. For example, the Product's Live Screen displays a live video image transferred from each channel. A user can control PTZ (Pan/Tilt/Zoom) on the Live Screen as well as zoom in/out and capture live video. To capture live video, the DVR provided by Digital Watchdog has a high capacity storage and also allows for inclusion of external hard disks. The video recording is stored in a hard drive supported by the video management system. See, Digital Watchdog NXMS User Manual; see also H.264 Digital Video Recorder User Manual.

26. Defendant's actions complained of herein will continue unless Defendant is enjoined by this court.

27. Defendant's actions complained of herein are causing irreparable harm and

monetary damage to Plaintiff and will continue to do so unless and until Defendant is enjoined and restrained by this Court.

28.  Plaintiff is in compliance with 35 U.S.C. § 287.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the Court:

A.  Enter a judgment finding that Defendant has directly infringed the '462 Patent;

B.  Pursuant to 35 U.S.C. § 284, order Defendant to pay damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention, together with interest and costs;

C.  Enter judgment for Plaintiff on this Complaint on all causes of action asserted herein;

D.  Enter an Order enjoining Defendant, its agents, officers, servants, employees, attorneys, and all persons in active concert or participation with Defendant who receive notice of the order from further infringement of United States Patent No. RE43,462 (or, in the alternative, awarding Plaintiff a running royalty from the time of judgment going forward);

E.  Award Plaintiff pre-judgment and post-judgment interest and costs; and

F.  Award Plaintiff such further relief to which the Court finds Plaintiff entitled under law or equity.

Dated: January 3, 2019       Respectfully submitted,

/s/ *Jay Johnson*
**JAY JOHNSON**
State Bar No. 24067322
**D. BRADLEY KIZZIA**
State Bar No. 11547550
**KIZZIA JOHNSON, PLLC**
1910 Pacific Ave., Suite 13000
Dallas, Texas 75201
(214) 451-0164
Fax: (214) 451-0165
jay@kjpllc.com
bkizzia@kjpllc.com

**ATTORNEYS FOR PLAINTIFF**

**EXHIBIT A**